IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES E. GAMBLE | * | |
| | * | |
| *Plaintiff* | * | |
| | * | |
| v. | * | Civil No. JFM-11-1779 |
| | * | |
| FRADKIN & WEBER, P.A. | * | |
| | * | |
| | * | |
| | * | |
| *Defendant.* | * | |
| | * | |
| | ***** | |

MEMORANDUM

Plaintiff James Gamble ("Gamble" ) brings this action against Defendant Fradkin & Weber, P.A. ("Fradkin & Weber"), a law firm that engages in the business of debt collection. Gamble alleges that in attempting to recover a debt from him, Fradkin & Weber violated the Fair Debt Collection Practices Act ("FDCPA") and tortiously invaded his privacy by intruding upon his seclusion. Now pending before the court is Fradkin & Weber's motion to dismiss the claims against it. Gamble opposed the motion to dismiss but Fradkin & Weber did not file a reply and the time for doing so has passed. The motion to dismiss is therefore ripe and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, Defendant's motion is denied with respect to the FDCPA claim and granted with respect to the invasion of privacy claim.

I. BACKGROUND

This case stems from a debt that Gamble incurred on or about June 13, 2008 on his Continental Finance MasterCard. That debt was sold several times to various companies. (Compl. ¶ 6, ECF No. 1). Continental Finance Company ("Continental") initially sold Gamble's

debt—in a portfolio of similar debts—to LP Investments, LTD ("LP Investments") on or about Feb. 20, 2009, roughly eight months after the debt was incurred. (*Id.* ¶ 11). On the same day it acquired that portfolio, LP Investments sold the portfolio to DelMarva Capital Group, LLC, ("DelMarva"). (*Id.* ¶ 12). More than a year later, on or about April 27, 2010, DelMarva sold Gamble's debt to Fradkin & Weber. (*Id.* ¶ 17).

In between these sales of his debt, Gamble filed for protection under Chapter 7 of the Bankruptcy Code. His petition was filed with the United States Bankruptcy Court for the District of Maryland on Jan. 29, 2010, when DelMarva owned his debt. (*Id.* ¶ 13). In the schedules filed with that court, Gamble listed an unsecured loan of $707.70 in favor of "Continental Finance MasterCard." (*Id*. ¶ 14; Compl. Ex. B). Gamble claims this information was drawn from his credit report and that when he filed for bankruptcy he had no notice that the debt had been sold. (*Id.* ¶ 15). No objections to discharge or adversary proceedings were filed to determine the dischargeability of the debt. (*Id.* ¶ 16). Subsequently, on May 12, 2010, Gamble was granted a discharge of all dischargeable debts, pursuant to 11 U.S.C. § 524. (*Id.* ¶ 18). Gamble contends the debt he owed to Continental, which was eventually purchased by Fradkin & Weber, was among those discharged in the bankruptcy proceeding. (*Id.*).

One week after the bankruptcy court discharged Gamble's debts, Fradkin & Weber sent a letter to Gamble informing him that the debt he owed to Continental Finance had been sold to it. (*Id.* ¶ 19). Fradkin & Weber claims this letter was sent in compliance with the FDCPA and that it gave Gamble a 30-day period in which to dispute the validity of the debt. (Def.'s Mot. to Dismiss ¶ 10, ECF No. 4). It appears that Gamble did not receive the letter, which was returned to Fradkin & Weber on July 8, 2010 as "attempted–not known, unable to forward." (*Id.* ¶ 11). Nonetheless, before Fradkin & Weber received the returned letter and after the 30-day period

expired, Fradkin & Weber filed a lawsuit in the District Court of Prince George's County to collect on the debt ("collections action"). (*Id.* ¶ 10; Compl. ¶ 20; Compl. Ex. C). In the complaint, filed on or about June 28, 2010, Michael Fradkin, a principal of Fradkin & Weber, certified that the debt was "justly due and owing." (Compl. ¶ 21). Gamble was served with the complaint and summons in the collections action in April 2011 and trial was set for June 23, 2011.[1] (*Id.* ¶ 22; Def.'s Mot. to Dismiss ¶ 11–14).

Fradkin & Weber asserts that it had no actual or constructive notice of the bankruptcy filing when it filed suit against Gamble. (Def.'s Mot. to Dismiss ¶ 7). It claims the debt was sold without any knowledge of the bankruptcy filing. (*Id.* ¶ 4). Fradkin & Weber notes that Gamble's bankruptcy schedules and mailing matrix did not list Fradkin & Weber among his creditors, nor did Gamble amend these documents to list the correct creditor, which Fradkin & Weber claims would have provided it notice of the bankruptcy filing. (*Id.* ¶¶ 5, 9).

After it learned of the bankruptcy discharge, Fradkin & Weber dismissed its collections action against Gamble on May 2, 2011. (*Id.* ¶ 15). Gamble, however, initiated an adversary action against Fradkin & Weber in the Bankruptcy Court, alleging willful violation of the discharge injunction and violation of the FDCPA ("adversary action"). (Case No. 11–00348; *see* Def.'s Mot. to Dismiss ¶ 16). Fradkin & Weber moved to dismiss the adversary action but before the bankruptcy court could rule on the motion Gamble filed a notice of voluntary dismissal. (Def.'s Mot. to Dismiss ¶¶ 17–18). Gamble's discharge violation claim was dismissed with prejudice; his FDCPA claim was dismissed without prejudice. (*Id.* ¶ 18).

[1] Fradkin & Weber claims it had great difficulty locating Gamble, which is why it took nearly a year to serve him with the summons and complaint in the collections action. (Def.'s Mot. to Dismiss. ¶¶ 11–14). It avers the May letter was returned to it with no forwarding address and that it believed Plaintiff moved residences during this time. (*Id.* ¶ 11–12). The parties also provide different information on the date and manner in which Gamble was finally served. (*See id.* ¶ 13 (stating service on Gamble's wife was made on or about April 23, 2011); Compl. ¶ 22 (claiming Gamble was served by process server on or about April 12, 2011)). These discrepancies are not material to the outcome of this case.

Gamble then filed suit in this court on June 29, 2011, alleging violations of the FDCPA and tortious invasion of privacy.

II. ANALYSIS

A. Standard of Review

Fradkin &Weber moves to dismiss the complaint pursuant to FRCP 12(b)(6).[2] "'[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Generally, when ruling on a 12(b)(6) motion, the court assumes that the facts alleged in the complaint are true and draws all reasonable factual inferences in the nonmoving party's favor. *Edwards*, 178 F.3d at 244. A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

B. FDCPA

The FDCPA protects consumers from abusive and deceptive practices by debt collectors. *See U.S. v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 135 (4th Cir. 1996). Section 1692e forbids the use of "any false, deceptive, or misleading representation or means in connection with the

[2] Fradkin & Weber does not cite FRCP 12(b)(6) specifically but cites FRCP 12(b) generally and asserts that Plaintiff fails to state claims upon which relief can be granted. (Def.'s Mot. to Dismiss ¶ 37; *id.* at 11). The motion is therefore treated as falling under (12)(b)(6).

collection of any debt." 15 U.S.C. § 1692e. Among the conduct it prohibits are the "false representation of . . . the character, amount, or legal status of any debt" and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §§ 1692e(2)(A), 1692e(10).

Fradkin & Weber advances two distinct arguments. First, it argues it is not liable under the FDCPA because it lacked knowledge that Gamble had filed for bankruptcy and therefore could not have made a false statement under the FDCPA. Second, it argues that even if Gamble states a claim under the FDCPA he cannot pursue it here because the Bankruptcy Code provides the exclusive remedy available to him. (*Id.* ¶ 27). Each argument is addressed in turn.[3]

a. FDCPA Requires No Knowledge of Falsity

There is no dispute that Fradkin & Weber is a debt collector subject to the FDCPA. *See Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229 (4th Cir. 2007) (reiterating that the FDCPA "applies to law firms that constitute debt collectors, even where their debt-collecting activity is litigation"). Nor does Fradkin & Weber appear to dispute that Gamble no longer owed the debt at issue. Instead, it argues that it filed the collections action "in the absence of actual or constructive notice of the bankruptcy filing." (Def.'s Mot. to Dismiss ¶ 7). Fradkin & Weber asserts it was "operating under the assumption that the debt was owed, *not* that the debt was owed *in spite of* a bankruptcy filing." (*Id.* ¶ 33) (emphasis in original).

This argument misses the point. The FDCPA is a strict liability statute. A plaintiff need only prove one violation of the Act to trigger liability. *Long v. McMullen, Drury & Pinder*, No. RDB–10–2776, 2011 WL 4458849, at *3 (D. Md. Sept. 23, 2001); *Spencer v. Hendersen-Webb*,

[3] Defendants also make the odd argument that Gamble failed to allege they did not follow the procedure for Dunning letters outlined in 15 U.S.C. § 1692g. (Def.'s Mot. to Dismiss ¶¶ 19–23). Plaintiff's claim, however, is based on § 1692e. The affirmative defense to such claims is not compliance with the procedures of § 1692g but rather the "bona fide mistake" defense outlined in § 1692k(c).

*Inc.*, 81 F. Supp. 2d 582, 590–91 (D. Md. 1999). Section 1692e applies even when a false representation was unintentional. *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 995, (7th Cir. 2003) (describing the test for whether a debt collector violated § 1693e as "objective, not turning on the question of what the debt collector knew. . . ."); *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 495 (7th Cir. 2007) (stating that conduct need not be "deliberate, reckless, or even negligent to trigger liability—it need only be false . . . ."). The fact that Fradkin & Weber did not know of Gamble's bankruptcy does not affect whether its conduct was a false representation under the Act. Although 1692e is "not aimed specifically at efforts to collect debts that have been discharged in bankruptcy, this provision fits that practice to a T." *Ross*, 480 F.3d at 495. The filing of a suit to collect a discharge debt is therefore sufficient to state a claim under § 1692e. *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 728 (7th Cir. 2004) ("A demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the . . . discharge injunction, it is not.") (citations omitted).

The only defense to liability is provided in § 1692k(c), which states a debt collector is not liable if a violation is both unintentional and the result of "a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Whether Fradkin & Weber's conduct meets this test can only be decided at a later stage in this litigation. *See Sayyed*, 485 F.3d at 235 (noting that the proper place for this inquiry is not at the Rule 12(b)(6) stage); *Shah v. Collecto*, No. Civ. A. 2004–4059, 2005 WL 2216242, at *7–8 (D. Md. Sept. 12, 2005) (addressing the merits of a § 1692k(c) defense in the context of a summary judgment motion); *Young v. Ryan*, No. ELH-11-01562, 2011 WL 6217007, at * 3 (D. Md. Dec.

12, 2011) (observing that the bona fide error defense "will almost always depend . . . on the determination of facts not included in the pleadings").

b. Bankruptcy Code Does Not Prevent Recovery Under FDCPA

Fradkin & Weber argues that even if Gamble states a claim under the FDCPA, he cannot recover under that statute because the Bankruptcy Code provides the exclusive remedy for his claim. In essence, it argues Gamble is recycling the claim from his adversary action (that Fradkin & Weber's conduct violated the Bankruptcy Code) which was dismissed with prejudice. (Def.'s Mot. to Dismiss ¶¶ 26–28). Fradkin & Weber contends Gamble can only seek recourse for that conduct under the Bankruptcy Code and therefore Gamble's claim under the FDCPA must be dismissed.

The Fourth Circuit has not addressed the question of the extent to which the Bankruptcy Code prevents debtors from seeking relief under the FDCPA for conduct that also constitutes a violation of the Bankruptcy Code.

A number of courts have held that specific FDCPA claims cannot be maintained because the Bankruptcy Code provides the proper remedy for the conduct at issue. This is particularly true when the conduct occurs within the bankruptcy proceeding itself. *See, e.g.*, *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010) (affirming dismissal of FDCPA claim based on a creditor's filing of an inflated proof of claim in a bankruptcy proceeding); *B–Real, LLC v. Rogers*, 405 B.R. 428, 434 (M.D. La. 2009) (dismissing FDCPA claim premised on filing of proof of claim because "in this specific factual situation application of the FDCPA is precluded by the Bankruptcy Code"); *Middlebrooks v. Interstate Credit Control, Inc.*, 391 B.R. 434, 437 (D. Minn. 2008) (dismissing FDCPA claim based on a wrongful proof of claim filed in bankruptcy).

More broadly, the Ninth Circuit appears to treat all FDCPA claims as foreclosed when they are based on conduct that violates the Bankruptcy Code. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002). In *Walls*, the Ninth Circuit dismissed a § 1692f claim for "unfair and unconscionable" debt collection brought simultaneously with an adverse action in Bankruptcy Court that alleged a violation of the discharge injunction. *Id.* at 511. The *Walls* court noted that the Bankruptcy Code provides its own remedy—civil contempt—for willful violations of a discharge order and said that allowing a simultaneous FDCPA claim "allow[s] debtors to bypass the Code's remedial scheme." *Id.* at 510. It stated that while "the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code." *Id.* Although some courts have read this language narrowly, others suggest *Walls* stands for the proposition that a debt collector's negligent attempts to collect from debtors during or after bankruptcy cannot yield liability. *Compare Rios v. Bakalar & Assocs.*, No. 11–20644, 2011 WL 2321775, at *2 (S.D. Fla. June 13, 2011) (reading *Walls* narrowly) *with Randolph*, 368 F.3d at 728 (reading *Walls* broadly).

To the extent that *Walls* stands for such a broad rule, it appears to be an outlier. *See, e.g.*, *Randolph*, 368 F.3d at 732–33 (allowing FDCPA claims for negligent falsehoods and holding that doing so does not contradict the Bankruptcy Code). *See also Simmons*, 622 F.3d at 96 n.2 (observing that the "broader rule" of *Walls* "has not been universally accepted"); *Rios*, 2011 WL 2321775, at *2 (analyzing *Walls* and *Randolph* and siding with *Randolph*).

In this case, there is no reason to believe that Gamble should be allowed only to recover under the Bankruptcy Code and not under the FDCPA. The conduct at issue occurred after the discharge of Gamble's debt, not during the pendency of his bankruptcy. *Cf. Wan v. Discover Fin. Servs.*, 324 B.R. 124, 127 (N.D. Cal. 2005) (suggesting conduct that occurs during a

bankruptcy case "raises an even greater concern about potential overlap and conflict between the Bankruptcy Code and the FDCPA"). Nor is there a reason to adopt the broad logic of the Ninth Circuit in this context.

For the foregoing reasons, Defendant's motion to dismiss Gamble's FDCPA claim is denied.

c. Invasion of Privacy by Intrusion Upon Seclusion

Maryland recognizes four forms of invasion of privacy, including intrusion upon seclusion. *Household Fin. Corp. v. Bridge*, 250 A.2d 878, 881–83 (Md. 1969). The "gist of the offense is the intrusion into a private place or the invasion of a private seclusion that the plaintiff has thrown about his person or affairs." *Furman v. Sheppard*, 744 A.2d 583, 585–86 (Md. App. 2000); *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1116 (Md. App. 1986) (citing Restatement (Second) of Torts § 652B). The elements of the tort are an intentional intrusion upon another person's solitude, seclusion, private affairs, or concerns in a manner that would be highly offensive to a reasonable person. *Trundle v. Homeside Lending, Inc.*, 162 F. Supp. 2d 396, 401 (D. Md. 2001). Intent is required; the tort cannot be committed by unintended conduct amounting only to a lack of due care. *Bailer v. Erie Ins. Exch.*, 687 A.2d 1375, 1381 (Md. 1997) (citing *Snakenberg v. Hartford Cas. Ins. Co.*, 383 S.E. 2d. 2, 4 (S.C. App. 1989)).

Gamble asserts that by sending a process server to his home to serve him with process in the collections action, Fradkin & Weber intruded upon his seclusion.[4] (Pl's Opp'n at 4, ECF No. 6). Gamble argues a reasonable person would be highly offended if he were sued for a debt he believed was discharged in bankruptcy. (*Id.*).

[4] As noted earlier, the parties each state different methods by which Gamble was served in the collections action. *See supra* n.1. Because this is a motion to dismiss I take Gamble's version of events, as alleged in his complaint, as true for the purpose of this analysis. (*See* Compl. ¶ 22 (claiming Gamble was served by process server on or about April 12, 2011)).

These arguments fail. In deciding what conduct intrudes upon an individual's seclusion, the Maryland Court of Appeals has found it "generally recognized that a creditor has a right to take reasonable measures to pursue his debtor and persuade payment, although the steps taken may result in some invasion of the debtor's privacy." *Household Fin. Corp.*, 250 A.2d at 884. How far a creditor may go to collect a debt is to be decided on the individual facts of each case, but "usually on the grounds of reasonableness." *Id.*

Courts have found creditors' actions reasonable when they constitute non-invasive attempts to collect a debt. *See, e.g.*, *Shuler v. Ingram & Assocs.*, 710 F. Supp. 2d 1213, 1227 (N.D. Ala. 2010) (finding no intrusion because "one conversation discussing payment methods and permissible remedies upon execution of judgment does not 'exceed the bounds of reasonableness . . .'") (citing *Black v. Aegis Consumer Funding Grp., Inc.*, No. Civ. A. 99–0412–P–S, 2001 WL 228062, at *5 (S.D. Ala. Feb. 8, 2001); *Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 WL 1256771, at *10 (N.D. Ohio Mar. 31, 2011) (finding no intrusion but listing unreasonable practices of debt collection, including campaigns "to harass and torment the debtor" through at least six daily phone calls). Only when such conduct becomes more persistent, deliberate, or vile do courts begin to consider it unreasonable. *See, e.g.*, *Summit Loans v. Pecola*, 288 A.2d 114, 118 (Md. 1972) (finding sufficient evidence to support jury verdict against a debt collector for a "persistent and deliberate policy" to "harass" the debtor and to "use vicious and vile language to coerce and intimidate here."). *See also* Restatement (Second) of Torts § 652B cmt. d. (stating there should be no liability unless a debt collector's conduct amounts to "hounding" a debtor). Indeed, the Restatement specifically states a debt collector should not be liable for invasion of privacy for "knocking at the plaintiff's door . . . to demand payment of a debt." *Id*.

In this case, Fradkin & Weber's conduct was clearly reasonable. Gamble has not alleged Fradkin & Weber knew the debt on which they sought to collect was no longer owed at the time they served process. Nor has Gamble asserted that the process server conducted himself or herself in a highly offensive manner when he or she served Gamble with process. Although Gamble in fact no longer owed the debt that Fradkin & Weber attempted to collect, this fact alone does not make unreasonable the otherwise reasonable conduct of attempting to collect a debt through serving process.

Defendant's motion to dismiss the invasion of privacy claim is therefore granted.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied with respect to the FDCPA claim and granted with respect to the invasion of privacy claim. A separate order follows.

Date: January 13, 2012

/s/
J. Frederick Motz
United States District Judge